V. O. EASTMAN v. H. B. PARKER and J. R. HUNT.

General Term, 1892.

*Mill privilege.    Construction of deed.*

In 1850, H. was the owner of the river-bed and the land upon both sides at a certain point in the Missisquoi river.   On the westerly bank he had erected a grist-mill which then required for its full operation a certain amount of water.   At that point a ledge of rock extended near the middle of the stream from near the grist mill some distance up, so that in times of low water the water naturally divided, a part flowing in the westerly and a part in the easterly channel. Ordinarily sufficient water. naturally flowed in the westerly channel to run to its full capacity the grist mill, but in times of very low water, H. was accustomed to divert a portion of the water from the easterly into the westerly channel by a temporary obstruction.   This being the condition of things, H. conveyed to E. certain rights in the east bank and in the water by deed which contained the following description :  "Also room in the river below the falls for the convenience of building any kind of machinery except a grist-mill.   Also to put a dam across the river under the bridge not to damage the grist-mill, and to use the surplus of water on his side of the river not to the injury of the said grist-mill, and not to raise the dam any higher than what the water has been at low water mark." Under this deed E. built a saw-mill and erected a dam of sufficient height so that in time of low water it would set back the water and cause that to flow across the dividing ledge and into the westerly channel, which would otherwise naturally flow into the easterly channel.   *Held,*

(*a*)  That under this deed the grist-mill privilege had the right to use so much of the water as was necessary to run the grist-mill to its full capacity at the time the deed was executed, irrespective of whether it naturally flowed into the westerly or easterly channel.

(*b*)   That whether or not the owner of the saw-mill privilege
could be compelled to maintain his dam at a given height,
so long as he did maintain it the grist-mill privilege was
entitled to the benefit of it.

(*c*)   That the rights of the respective privileges in the water above
what was necessary to run the grist-mill at the date of the
execution of the deed, would be determined by the natural
flow of the water into the two channels.

(*d*)   That these rights, however, must be determined by the con-
dition of things when the deed was executed and that any
artificial changes in the bed of the river since then should
be taken into account.

Bill to restrain the defendants from infringing the water
rights of the orator in the use of a mill privilege. Heard
upon a master's report at the February term, 1892, Orleans
county. START, chancellor, decreed for the orator. Ap-
peal by the defendants. The head notes and opinion state
the case,

*Dickerman & Young* for the orator.

Herron granted the surplus water. This left him the right
to the first use of whatever water was required to run his
mill as it then stood, and that right the orator now has
through subsequent grants. Gould, Waters, s. 320; *Sum-
ner* v. *Foster*, 7 Pick. 32; *Rood et al.* v. *Johnson*, 26 Vt.
64; *Rogers* v. *Bancroft et al.*, 20 Vt. 250; *Adams et al.* v.
*Warner*, 23 Vt. 395-410; *Albee* v. *Huntley*, 56 Vt. 454;
*Miller* v. *Lapham et al.*, 44 Vt. 416.

*C. A. Prouty* for the defendants.

What the orator asks is in effect that the defendants be re-
quired to maintain their dam for his benefit, for in no other
way can the water which naturally flows into their channel
be set back and made available in the westerly channel;
but there is nothing in the deed nor in the use of the prem-

ises which furnishes a warrant for this claim.    Wash. Eas., 403 ; *Felton* v. *Simpson*, 11 Ired. 84.

MUNSON, J.  This controversy concerns the water privileges of two mills, located on opposite banks of the Missisquoi River, and supplied from the same fall.  For some time previous to May 7th, 1850, one Herron owned the lots upon which both mills are situated and the entire river bed between them.  During this period Herron operated a gristmill located on the westerly bank ; but prior to the day named no mill had been erected on the easterly bank.  On that day, Herron conveyed to one Elkins the land east of the river with certain rights in the stream.  The defendants are the grantees, through several intermediate deeds, of the easterly mill lot and privilege.  The orator is the grantee, through several intermediate deeds, of the westerly mill lot and privilege.  Consequently, the defendants are the owners of whatever rights were conveyed by Herron to Elkins, and the orator is the owner of whatever rights were left in Herron after such conveyance, unless those rights have been modified by adverse use or by judicial determination.  The defendants do not claim to have acquired any contested rights by either of these methods ; nor does the orator rely upon either to secure him any greater rights than were left unconveyed by the deed, if construed as he claims it should be.  Then, if Herron's deed is held to have left in the grantor rights co-extensive with those now claimed by the orator, it will be unnecessary to consider the further questions presented.

The description in the deed referred to, as far as involved in this inquiry, is as follows :  "Also room in the river below the falls for the convenience of building for any kind of machinery except a grist-mill.  Also to put a dam across the river under the bridge not to damage the grist-mill and to use the surplus of water on his side of the river not to the in-

jury of said grist-mill, and not to raise the dam any higher than what the water has been at low water mark. Also bounded on the west and north-west by said Elkins coming three feet into the river at low water mark." To aid in the construction of these provisions we have certain facts reported as to the peculiarities of the stream at this point, and the manner in which Herron used it before the conveyance.

The bed of the river is here divided into two channels by a ridge of rock, which rises near the center of the river a short distance above the mills, and in times of ordinary flow separates the water into two streams. The water which naturally flowed into the westerly channel was sufficient to run Herron's grist-mill continuously except in times of very low water. The water which entered the easterly channel was not available for the use of the grist-mill, unless retained and thrown back by some obstruction. When the water which naturally entered the westerly channel became insufficient, it was Herron's practice to place a temporary obstruction in the easterly channel, which set back the water of that channel and increased the volume which entered the westerly channel. This temporary obstruction went out with the return of high water, to be replaced when the occasion again required.

The dam erected by Elkins under the right given by this deed, and since maintained by Elkins and his grantees, serves in times of low water the purpose of the temporary obstructions made use of by Herron, except when the defendants draw upon the water sufficiently to prevent its rising to the required level. The defendants claim the right to do this at all times, regardless of the necessities of the orator; while the orator insists that the deed gives them no right to use the water when by so doing they will reduce the stream flowing to his mill below the volume which was required by the grist-mill at the time the deed was given. We think that construction of the deed which the orator contends for is

the true one. The right granted was the right " to use the surplus of water on his side of the river, not to the injury of said grist-mill." If it had been the intention to grant the unlimited use of the water that entered the easterly channel, it is not probable that the word " surplus " would have been used. There is nothing in this natural division of the water into two streams by a central ridge of rock to lead to the designation of either as the surplus of the river. It is not the case of a secondary channel filled by the overflow of a rising stream. The separate streams are developed by the falling of the water, and both exist when the water is at its lowest stage. We think the word " surplus " had reference to the use which had been made of the stream, and that it restricted the grant to what there was in the easterly channel above the requirement of the grist-mill. The intention is also manifest from the words which preclude any use to the injury of the grist-mill. It is true that, strictly speaking, this further limitation would indicate that the thing granted under the designation of surplus water was something which, but for such limitation, might be used to the injury of the grist-mill. But, in construing a description of this character, we are not to lose sight of an obvious meaning in an attempt to find accuracy of expression. We look upon this additional provision as imposing the same restriction in different language. The surplus water was that not required for the grist-mill. The water was not to be taken to the injury of the grist-mill. There is no room to doubt that it was the intention to reserve all the water naturally entering the easterly channel that had been found necessary for the use of the grist-mill in times of low water, and we think the language employed was sufficient to effect the grantor's purpose.

But while the orator is always entitled to as much water as was required to run the grist-mill, his rights in the stream are not limited by that requirement. The interest conveyed by Herron's deed was the right to use the surplus of the

water on the grantee's side of the river.   So the maximum volume available to the defendants, when the water of the river is divided into two streams, is what naturally enters the easterly channel.   They are not entitled to divert from the westerly channel so much of the water which naturally enters that channel as may not be needed to complete the volume required for the grist-mill.   The court below correctly held that the deed leaves in the orator the right to so much of the water of the river as was required to run the grist-mill, but erred in assuming that all above that requirement belongs to the defendants.   Moreover, it appears that since 1877 a small channel has been cut in the rock bottom of the river and some stones removed from the easterly channel and dividing ridge, for the purpose and with the effect of diverting into the easterly channel some of the water which would naturally enter the westerly channel.   It also appears that some stones have been removed from the westerly channel, which may to some extent counteract the effect of the other changes.   The rights of the parties in so much of the stream as there may be in excess of the requirement of the grist-mill must depend upon the natural separation of the water with the bed in its natural condition.   The effect of these alterations has not been measured, and may not be sufficient to invite further litigation ; but the respective rights of the parties cannot be properly stated without recognizing this feature of the case ; and the mandate is framed accordingly.

We do not undertake to determine from the deeds submitted for the purpose whether the place where Herron erected his temporary obstructions was within the line of his lot or not.   Assuming that it was not, our construction of his deed to Elkins would be the same.

It is suggested by counsel for defendants that the question involved is identical with the question whether the orator can compel the defendants to maintain their dam for

his benefit.   We do not so regard it.   It is true that the bill
prays generally for a determination of the manner in which
the parties shall use the water ; but the decree below covers.
only an apportionment of the water, without undertaking to
prescribe by whom or in what manner it shall be ponded ;
and the orator seeks nothing beyond this.   The question as
we view it concerns the orator's right to the water, whether
retained by the defendants' dam or by other means in de-
fault of such a dam.   Without considering whether the ora-
tor could compel the defendants to maintain their dam, we
hold that so long as it is maintained he is entitled to the ben-
efit of it.

*Decree reversed and cause remanded with mandate.*